Upon the trial at Rockingham, on the last circuit, before his Honor,Judge Pearson, the evidence was that in the year 1831, one Latta conveyed the slave in question to the plaintiff in trust to secure and pay certain debts; that afterwards Latta and the plaintiff appointed by parol one Donnell as their agent to hire out the slave and sell him as soon as an opportunity offered; that the negro was hired out by Donnell for the year 1833, to one Forrest, who lived near Hillsborough; that in November of the year 1833, Donnell went to Hillsborough and offered to sell the negro, when the defendant, who was well acquainted with him and saw him frequently, after much chaffering, agreed to take him and persons were called upon to bear witness to the bargain. The (194) price fixed on was $525, payable on demand after the 1st day of January, 1834, with interest from that date; the defendant was to take possession of the negro as soon as his time was out with Forrest, to wit, about the 1st of January, 1834, and was to notify Donnell by letter of his having done so. The evidence left it doubtful whether the defendant *Page 154 
was to give Donnell his note for the price at February court, 1834, in Hillsborough, or whether Donnell was to take the defendant's letter as the evidence of debt. The evidence also left it doubtful whether the parties intended that the sale should be effected merely by the above stated bargain and delivery to the defendant, or whether, besides the sale and delivery by which the parties intended to pass the property, there was an agreement that Donnell was to procure a bill of sale from the proper parties and hand it to the defendant, or whether the parties intended to effect the sale by a bill of sale to be procured by Donnell from the proper persons, and did not intend that the property should pass by delivery to the defendant, but only that he should hold the negro as bailee until the sale was consummated by the bill of sale. It was also proved that in November, 1833, Donnell appraised the plaintiff of his having made the trade, and the plaintiff assented to it; that about the 1st of January, 1834, the defendant took possession of the negro and put him to work at his trade as a blacksmith, and notified Donnell thereof by letter, in which he stated that the negro was in his possession; that he "considered him as delivered," and was ready to execute his bond, according to the contract. It appeared further that soon after February court, 1834, the negro died, and the defendant upon a demand being made, refused to pay the money or give his note. The defendant's counsel, for the purpose of reducing the stipulated price, proposed to show that at the time when the defendant took the negro into possession, he was in bad health and of little or no value; but the court rejected this evidence, there being no suggestion of fraud or of a warranty of soundness.
The defendant's counsel contended:
First, that the evidence, if true, did not prove a sale accompanied with an actual delivery so as to pass the title under the act of 1792 (see 1 Rev. Stat., ch. 37, sec. 19).
(195) Secondly, that the act of 1792 did not apply to a sale between vendor and vendee, where no third person as creditor or purchaser was concerned. The last point was reserved with leave to move to set aside the verdict, and enter a nonsuit.
His Honor charged the jury that the property in slaves might be passed in two ways, either by a bill of sale or by a sale and delivery, and it was for them to decide from the evidence which of these two ways the parties intended to adopt; that if they intended to effect the transfer of the property by means of a sale and delivery, and the defendant took possession of the slave with an intention thereby to acquire the property, and make him his own, they would find for the plaintiff, although the evidence satisfied them that there was an understanding that after the slave had thus been transferred to the defendant and became his *Page 155 
property, Donnell was to procure a bill of sale and hand it to the defendant for the further assurance of his title. But if the evidence satisfied the jury that the parties did not intend to pass the property by sale and delivery, but intended to effect the sale by means of a bill of sale, and that the defendant took possession of the slave as a bailee, to hold him until a bill of sale was procured, then they would find for the defendant. The jury found a verdict for the plaintiff; and the defendant moved for a new trial because of the rejection of his testimony, and also for error in the charge. This motion being overruled he moved to set aside the verdict and enter a nonsuit upon the question reserved, but this motion was also overruled and judgment pronounced for the plaintiff, whereupon the defendant appealed.
No error has been shown by the defendant to warrant a reversal of this judgment. The instruction of the judge was in precise conformity to the doctrine laid down by this court in the case of Henryv. Patrick, ante, 1 vol., 358, and the evidence justified that instruction. The testimony offered for the purpose of reducing the (196) stipulated price was properly rejected. There was no warranty of the health of the negro, express or implied, and no imputation of unfairness in the vendor. Of course the rule of caveat emptor applied. The purchaser bought for better for worse, and was therefore bound to fulfill his contract. The cases which have been cited in argument for the defendant, whether well or ill decided, do not apply to a sale of this character — but to sales at an agreed price where the articles delivered do not correspond in nature or in quality with those which were contracted for. In such cases the vendee has certainly a right to reject the articles altogether. If he does not and there is no warranty, the ordinary presumption is that he waives his objection to them because of their not corresponding with the contract. But if from the nature of the transaction it be not practicable for him to reject the articles altogether — as for instance where they have been used before the discovery of this discrepancy — then according to these cases he may reduce the vendor's claim to a quantum valebant, or to what they are actually worth. (Stark on Evidence, Vendor and Vendee.) But here the purchaser received the very article for which he contracted — there was no stipulation with respect to its qualities, and these were at least as well known to him as to the vendor. There can be no more reason to discharge him from part of the price because the thing purchased turned out to be less valuable than *Page 156 
was expected, than there could be to charge him with a higher price if it had proved more valuable than was anticipated. Where contracts are lawful and fair it is the duty of courts to enforce their execution according to the agreement of the parties. The judgment must be affirmed.
PER CURIAM. Judgment affirmed.
Cited: Featherston v. Featherston, 33 N.C. 319; Morris v. Rippey,49 N.C. 535; McEntyre v. McEntyre, 34 N.C. 302; Odom v. Harrison,46 N.C. 403; Waldo v. Halsey, 48 N.C. 108; Hobbs v. Riddick,50 N.C. 81; Smith v. Love, 64 N.C. 441.
(197)